## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:25-cv-01727 |
| | ) | |
| v. | ) | |
| | ) | **JURY  TRIAL DEMAND** |
| OPTISIGNS INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against OptiSigns, Inc. ("OptiSigns" or "Defendant") for infringement of United States Patent Nos. 10,360,571 ("the '571 Patent"), 10,853,825 ("the '825 Patent"), 10,977,672 ("the '672 Patent"), 11,042,890 ("the '890 Patent"), 11,301,880 ("the '880 Patent") (collectively the "Patents-in-Suit").

## THE PARTIES

1.      Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.      Upon information and belief, Defendant OptiSigns is a corporation organized and existing under the laws of Delaware with a principal place of business located at 7676 Hillmont Street, 290N, Houston, TX 77040 and may be served with process through its registered agent in Texas at Henry Le, 7676 Hillmont Street, 290N, Houston, TX 77040.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.      This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.      This Court has personal jurisdiction over Defendant at least because Defendant is maintains its principal place of business in this District and engages in continuous and systematic business activities within this District.

6.      This Court also has personal jurisdiction over Defendant at least because Defendant has committed acts of patent infringement giving rise to this action within the State of Texas and this judicial district and thus has established minimum contacts such that the exercise of personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant maintains its principal place of business in this District and has committed acts of patent infringement in this District.

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

8.      Alpha Modus Corp. specializes in the development of innovative retail technologies.

9.      At the core of Alpha Modus's technology portfolio, including the Patents-in-Suit, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

10.    Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Patents-in-Suit.

11.    On January 11, 2024, Alpha Modus entered into a substantial intellectual property licensing agreement with GZ6G Technologies Corp. *See* Alpha Modus Announces Intellectual Property License Agreement with GZ6G Technologies Corp., available at https://alphamodus.com/2024/01/12/alpha-modus-announces-intellectual-property-license-agreement-with-gz6g-technologies-corp/. This agreement authorized GZ6G Technologies Corp. to utilize Alpha Modus's patented technology in their operations, with a particular focus on the Stadium and Event Management industry.  Alpha Modus has entered into similar intellectual property licensing agreements with Xalles Holdings Inc. and CashXAI Inc.  *See* Alpha Modus Announces Intellectual Property License Agreement with GZ6G Technologies Corp., available at https://alphamodus.com/2024/01/11/alpha-modus-announces-intellectual-property-license-agreement-with-gz6g-technologies-corp/ and Alpha Modus Announces Intellectual Property License Agreement with Xalles Holdings and its Subsidiary CashXAI, available at https://alphamodus.com/2024/04/16/alpha-modus-announces-intellectual-property-license-agreement-with-xalles-holdings-and-its-subsidiary-cashxai/.

12.    These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

**THE '571 PATENT**

13.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,360,571 ("the '571

Patent") titled "Method For Monitoring And Analyzing Behavior And Uses Thereof," including the right to sue for all past, present, and future infringement. A true and correct copy of the '571 Patent is attached to this Complaint at Exhibit A.

14.    The '571 Patent issued from U.S. Patent Application Serial No. 14/335,429.

15.    The '571 Patent claims the benefit of U.S. Patent Application Serial No. 61/856,525, filed on July 19, 2013.

16.    The Patent Office issued the '571 Patent on July 23, 2019, after a full and fair examination.

17.    The '571 Patent is valid and enforceable.

18.    The '571 Patent relates to a method for monitoring and analyzing consumer behavior in real-time, particularly within retail environments. It utilizes various information monitoring devices to collect data about consumers, enhancing their shopping experience through targeted and personalized digital interactions.

19.    The inventors of the '571 Patent identified a critical need in the retail industry, especially brick-and-mortar stores, to adapt to the evolving shopping habits influenced by online retail and social media. The patent addresses the challenge of providing an enriched in-store experience that rivals online shopping, thus countering trends like showrooming.

20.    The '571 Patent provides several advantages over the prior art such as providing a method for real-time analysis and utilization of collected shopper data, including demographic, sentiment, and tracking information, to deliver personalized marketing, engagement, and promotional material directly influencing the consumer's purchasing decision.



*FIG. 1*



*FIG. 2*

21.     The '571 Patent describes and claims a specific method that involves using information monitoring devices, like video image devices, to gather data about shoppers. This data includes demographic characteristics (such as gender and age), sentiment, and tracking details (like movement and eye tracking). The patent details the process of analyzing this data in real-time and providing various responses, such as targeted marketing, personal engagement, or offering coupons, to enhance the shopping experience.

22.     Claim 1 of the '571 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about persons in a group of persons at a location, wherein

5

> (i) the persons are each in proximity of at least one of the one or more information monitoring devices at the location, wherein
>
> (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
>
> (iii) the one or more information monitoring devices comprise one or more video image devices;
>
> (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the persons, approximate age of the persons, and combinations thereof,
>
> (v) the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices,
>
> (vi) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices, eye movement of the persons tracked by the one or more video image devices, and combinations thereof,

(b) providing an opt-out option to the persons in the group of persons, wherein after receipt of an affirmation of the opt-out option from an opt-out person, the opt-out person is in the subset of the opt-out persons,

(c) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the persons in the group of persons, except for the subset of opt-out persons who have affirmatively opted-out, wherein the analyzed information comprises the demographic characteristic of the persons, the sentiment characteristic of the persons, and the tracking information of the persons; and

(d) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

> (i) engaging the person based upon the analyzed information of the person, wherein the engaging is performed using one or more displays and content being displayed on the one or more displays is selected based upon the analyzed information,
>
> (ii) sending a communication to a second person at the location who can then in real time directly interact with the person regarding at least a portion of the analyzed information,
>
> (iii) providing marketing or advertising information to the person in real time based upon the analyzed information, wherein the marketing or advertising information is either provided to the person by a display at

the location or by sending the marketing or advertising information to
the mobile device of the person, and

(iv) providing a coupon to the person in real time based upon the analyzed
information, wherein the coupon is either a printed out coupon or is a
digital coupon.

## THE '825 PATENT

23.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and

Jim Wang, of all right, title, and interest in and to United States Patent No. 10,853,825 (the "'825

Patent") titled "Method for monitoring and analyzing behavior and uses thereof," including the

right to sue for all past, present, and future infringement. A true and correct copy of the '825 Patent

is attached to this Complaint at Exhibit B.

24.     The '825 Patent issued from U.S. Patent Application No. 16/509,343 filed on

August 4, 2020.

25.     The '825 Patent is a continuation of application No. 14/335,429, filed on Jul. 18,

2014.

26.     The Patent Office issued the '825 Patent on December 1, 2020, after a full and fair

examination.

27.     The '825 Patent is valid and enforceable.

28.     The '825 Patent introduces a novel method for monitoring and analyzing consumer

behavior in real-time to enhance sales through engaging digital customer experiences.

29.     The '825 Patent addresses the emerging challenges faced by brick-and-mortar retail

stores due to the increasing prevalence of online shopping and showrooming. It provides

innovative solutions to enhance in-store customer experiences and counter the competitive

pressures from online retail by leveraging real-time data analysis and personalized engagement

strategies.

30.     The inventors of the '825 Patent recognized a significant gap in the ability of brick-and-mortar retail stores to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method that bridges this gap by utilizing advanced technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies accordingly.

31.     The '825 Patent provides several advantages over the prior art, such as real-time customer monitoring and the ability to generate targeted promotions and advertising based on behavioral analytics. This approach aims to provide more relevant and engaging consumer experiences, thereby influencing purchasing decisions and potentially increasing in-store sales.



*FIG. 1*



*FIG. 2*

32.    The '825 Patent describes and claims a specific method incorporating information monitoring devices to gather and analyze data collected by tracking the demographic and tracking characteristics of customers to generate a real-time analysis, which is then used to communicate with sales associates for personalized customer interaction.

33.    Claim 1 of the '825 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about a first person in a group of persons at a retail store, wherein
    (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
    (iii) the one or more information monitoring devices comprise one or more video image devices,
    (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the first person using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the first person, approximate age of the first person, and combinations thereof, and
    (v) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the first person, wherein the tracking characteristic of the first person is selected from a group consisting of movement of the first person relative to the one more information monitoring devices, eye movement of the first person tracked by the one or more video image devices, and combinations thereof;
(b) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the first person to generate a real time analysis of the first person, wherein the analyzed information comprises the demographic characteristic of the first person and the tracking information of the first person;
(c) utilizing the real time analysis to select a sales associate from a group of sales associates at the retail store; and
(d) sending a communication to the sales associate that comprises at least a portion of (A) the information gathered by the information monitoring devices, (B) the real time analysis, or (C) both; wherein the sales representative can then directly interact with the first person in response to the communication.

## THE '672 PATENT

34.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,977,672 (the "'672 Patent") titled "Method And System For Real-Time Inventory Management, Marketing, And Advertising In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '672 Patent is attached to this Complaint at Exhibit C.

35.    The '672 Patent issued from U.S. Patent Application No. 16/985,001 filed on August 4, 2020.

36.    The '672 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

37.    The Patent Office issued the '672 Patent on April 13, 2021, after a full and fair examination.

38.    The '672 Patent is valid and enforceable.

39.    The '672 Patent introduces a novel system for real-time inventory management, marketing, and advertising within a retail store setting.

40.    The '672 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of the increasing prevalence of online shopping and the phenomenon of showrooming. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail.

41.    The inventors of the '672 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and

system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

42.     The '672 Patent provides several advantages over the prior art, such as real-time inventory management and the ability to generate targeted promotions and advertising based on behavioral analytics. This approach aims to provide more relevant and engaging consumer experiences, thereby influencing purchasing decisions and potentially increasing in-store sales.



*FIG. 1*



*FIG. 2*

43.     The '672 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, display relevant product information and pricing, and generate promotions for customers based on real-time data analysis.

44.     Claim 1 of the '672 Patent reads:

1. A system for real-time inventory management, marketing, and advertising on a first visual display at a first visual display location in a retail store, comprising:
(a) a server comprising:
> (i) one or more server processors, and,
> (ii) a server memory storing computer-executable instructions that, when executed by the one or more server processors, cause the server to:
>> (A) identify, via image recognition, an inventory of one or more retail products physically located at the first visual display location in the retail store,
>> (B) display, on the first visual display, information about one or more of the one or more retail products physically located at the first visual display location,
>> (C) determine, in real-time, current pricing information regarding the one or more retail products physically located at the first visual display location,
>> (D) display, on the first visual display, the current pricing information regarding the one or more retail products physically located at the first visual display location,
>> (E) receive, using one or more information monitoring devices at the first visual display location, real-time data of a customer, and
>> (F) generate a promotion of one or more of the one or more retail products physically located at the first visual display location for the customer based on behavioral analytics.

## THE '890 PATENT

45.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit D.

46.     The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

47.     The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

48.    The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

49.    The '890 Patent is valid and enforceable.

50.    The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

51.    The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

52.    The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.



FIG. 1



*FIG. 2*

53.    The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

54.    Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about
     a person at a retail store, wherein
          (i) the person is in proximity to at least one of the one or more information
               monitoring devices at the retail store,
          (ii) the one or more information monitoring devices are operably
               connected to (A) a server, (B) one or more databases, or (C) both, and
          (iii) the step of gathering information using the one or more information
               monitoring devices comprises
                    (A) gathering object identification information of a product that the
                         person is interested in purchasing, and
                    (B) gathering sentiment information of the person with respect to
                         the product;
(b) analyzing the information in real time using (A) the server, (B) the one or
     more databases, or (C) both gathered by the information monitoring devices
     about the shopping activities of the plurality of persons to manage inventory
     of the products in the retail store at the one or more product points, wherein
     the analyzed information comprises the object identification information and
     the sentiment information; and

14

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

    (i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,

    (ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,

    (iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,

    (iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and

    (v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## THE '880 PATENT

55.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,301,880 (the "'880 Patent") titled "Method And System For Inventory Management In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '880 Patent is attached to this Complaint at Exhibit E.

56.    The '880 Patent issued from U.S. Patent Application No. 16/837,645 filed on April 1, 2020.

57.    The '880 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

58.    The Patent Office issued the '880 Patent on April 12, 2022, after a full and fair examination.

59.    The '880 Patent is valid and enforceable.

60.     The '880 Patent introduces a novel method and system for real-time inventory management within a retail store setting, designed to improve operational efficiency and customer experience.

61.     The '880 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and inventory management strategies.

62.     The inventors of the '880 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

63.     The '880 Patent provides several advantages over the prior art, such as real-time tracking of product interactions and the ability to send immediate responses for inventory adjustments. This method aims to minimize stockouts, enhance customer satisfaction, and boost sales by ensuring the availability of popular products.



*FIG. 1*



*FIG. 2*

64.    The '880 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, track product interactions, and generate real-time responses for inventory management based on data analysis.

65.    Claim 1 of the '880 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein
    (i) the retail store comprises a plurality of products that are stocked within the retail store, wherein the plurality of products are stocked upon one or more product points selected from a group consisting of shelves, end caps, displays, and combinations thereof,
    (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,

(iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both;

(iv) the one or more information monitoring devices comprise one or more video image devices,

(vi) the step of gathering information using the one or more information monitoring devices comprises

> (A) gathering product interaction information based upon product interactions the persons have with one or more products in the retail store, wherein the product interactions information comprises (I) the one or more products are picked up by the persons at the retail store, and (II) the one or more products are carried away by the persons at each of the retail store, and

> (B) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the product interaction information and the object identification information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

> (i) sending a communication to a retail person to check inventory levels for a first product of the one or more products at the product point for the first product,

> (ii) sending a communication to the retail store person to immediately re-stock the one or more first products at the product point for the first product,

> (iii) sending a communication to the retail store person to contact a distribution center to obtain the one or more first products for delivery to the retail store for restocking the one or more first products at the product point for the first product, and

> (iv) sending a communication to add one or more first products to an inventory order for inventory for the retail store.

## **OPTISIGNS**

66.    Defendant OptiSigns is a provider of digital signage technology to customers in the United States, known for its capability to transform digital display screens.

67.    OptiSigns provides IoT (Internet of Things) sensor products to its customers which allows its customers to utilize the sensors in order to interact with digital display screens in order

to provide information to OptiSigns' system to monitor information collected from the sensor, provide different content to the digital signage based on information provided from the sensor, and to control other devices using that information.

68.     More specifically, OptiSigns provides capability marketed by Defendant as "Lift & Learn" capability which utilizes RFID technology to monitor IoT sensors in order to determine when items, such as retail products, have been picked up, and OptiSigns' system can utilize that information so that retailers, using OptiSigns' products and services, can display information about the selected retail products to their retail customers on digital signage viewable to the retail customer.

69.     OptiSigns also provides its customers products providing the capability to utilize digital cameras in order to collect information, such as information about passing by foot traffic near digital signage captured by a camera, to analyze impressions and exposure of digital signage and to display different content based on demographic information of potential viewers near the digital signage.

70.     Defendant OptiSigns' products and services practice the patented systems and methods of the Patents-in-Suit.

71.     Defendant OptiSigns' implementation of these patented technologies in its products and services has, on information and belief, significantly contributed to the efficiency and profitability of digital signage utilized by OptiSigns' customers.

72.     Defendant OptiSigns' has been aware of Alpha Modus and the Patents-in-Suit at least as early as the filing of this Complaint.

73.    The financial gains accrued by Defendant OptiSigns' customers through the use of Alpha Modus's patented technology have been substantial, providing OptiSigns' customers with competitive advantages in the retail market.

74.    The benefits reaped by Defendant OptiSigns' through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

75.    This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by Defendant OptiSigns and by Defendant OptiSigns' customers in retail settings, which has led to significant commercial gains for Defendant OptiSigns and its customers at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT PATENT INFRINGEMENT OF THE '571 PATENT)

76.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

77.    Defendant has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '571 Patent, including digital signage utilizing Defendant OptiSigns' products and services ("the Accused Products").

78.    The Accused Products utilize one or more information monitoring devices, including IoT sensors and digital cameras, which are implemented using Defendant OptiSigns' products and services to gather information about persons at a location, such as in retail stores associated with Defendant OptiSigns' customers.

79.    The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

80.    The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in locations associated with Defendant OptiSigns' customers, such as retail locations with digital signage.

81.    The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

82.    Defendant has directly infringed the '571 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '571 Patent.

83.    The Accused Products satisfy each and every element of the asserted claim of the '571 Patent either literally or under the doctrine of equivalents.

84.    Defendant's infringing activities are and have been without authority or license under the '571 Patent.

85.    As a direct and proximate result of Defendant's infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

86.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant has been aware of the '571 Patent and its infringement thereof.  Despite this knowledge, Defendant has continued to supply the Accused Products, and Defendants' customers have continued to use the Accused Products in their retail operations using digital signage.

87.    Alpha Modus is informed and believes that Defendant knew or was willfully blind to the patented technology of the '571 Patent. Despite this knowledge or willful blindness,

Defendant has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

88.    Alpha Modus is informed and believes that Defendant has made no efforts to avoid infringement of the '571 Patent, despite its knowledge and understanding that its products and systems infringe the '571 Patent.

89.    Therefore, Defendant's infringement of the '571 Patent is willful and egregious, warranting an enhancement of damages.

90.    As such, Defendant has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '571 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '571 PATENT)

91.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

92.    Defendant is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '571 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '571 Patent.

93.    Defendants' customers have utilized the Accused Products in digital signage which practices the patented methods of the '571 Patent.

94.     Defendant's implementation of the Accused Products demonstrates specific intent to induce infringement of the '571 Patent. Defendant encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '571 Patent.

95.     Defendant's knowledge of the '571 Patent and its implementation of the Accused Products, combined with the ongoing use of the Accused Products by Defendant's customers, demonstrates Defendant's knowledge and intent that the Accused Products be used in a manner that infringes the '571 Patent.

96.     Defendant's actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendant's promotions and instructions, demonstrate Defendant's specific intent to induce infringement of the '571 Patent.

97.     Alpha Modus is informed and believes, and on that basis alleges, that Defendant knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Defendant, one or more claims of the '571 Patent.

98.     As a direct and proximate result of Defendant's induced infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

99.     Alpha Modus is entitled to recover from Defendant compensation in the form of monetary damages suffered as a result of Defendant's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT PATENT INFRINGEMENT OF THE '825 PATENT)

100.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

101.    Defendant has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '825 Patent, including digital signage utilizing the Accused Products.

102.    The Accused Products utilize one or more information monitoring devices, including IoT sensors and digital cameras, which are implemented using Defendant OptiSigns' products and services to gather information about persons at a location, such as in retail stores associated with Defendant OptiSigns' customers.

103.    The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

104.    The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in locations associated with Defendant OptiSigns' customers, such as retail locations with digital signage.

105.    The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

106.    Defendant has directly infringed the '825 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '825 Patent.

107.    The Accused Products satisfy each and every element of the asserted claim of the '825 Patent either literally or under the doctrine of equivalents.

108.    Defendant's infringing activities are and have been without authority or license under the '825 Patent.

109.    As a direct and proximate result of Defendant's infringement of the '825 Patent, Alpha Modus has suffered and will continue to suffer damage.

110.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant has been aware of the '825 Patent and its infringement thereof.  Despite this knowledge, Defendant has continued to supply the Accused Products, and Defendants' customers have continued to use the Accused Products in their retail operations using digital signage.

111.    Alpha Modus is informed and believes that Defendant knew or was willfully blind to the patented technology of the '825 Patent. Despite this knowledge or willful blindness, Defendant has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

112.    Alpha Modus is informed and believes that Defendant has made no efforts to avoid infringement of the '825 Patent, despite its knowledge and understanding that its products and systems infringe the '825 Patent.

113.    Therefore, Defendant's infringement of the '825 Patent is willful and egregious, warranting an enhancement of damages.

114.    As such, Defendant has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '825 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## <u>COUNT IV</u>

## <u>(INDUCED PATENT INFRINGEMENT OF THE '825 PATENT)</u>

115.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

116.    Defendant is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '825 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '825 Patent.

117.    Defendants' customers have utilized the Accused Products in digital signage which practices the patented methods of the '825 Patent.

118.    Defendant's implementation of the Accused Products demonstrates specific intent to induce infringement of the '825 Patent. Defendant encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '825 Patent.

119.    Defendant's knowledge of the '825 Patent and its implementation of the Accused Products, combined with the ongoing use of the Accused Products by Defendant's customers, demonstrates Defendant's knowledge and intent that the Accused Products be used in a manner that infringes the '825 Patent.

120.    Defendant's actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendant's promotions and instructions, demonstrate Defendant's specific intent to induce infringement of the '825 Patent.

121.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Defendant, one or more claims of the '825 Patent.

122.    As a direct and proximate result of Defendant's induced infringement of the '825 Patent, Alpha Modus has suffered and will continue to suffer damage.

123.     Alpha Modus is entitled to recover from Defendant compensation in the form of monetary damages suffered as a result of Defendant's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT PATENT INFRINGEMENT OF THE '672 PATENT)

124.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

125.     Defendant has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '672 Patent, including digital signage utilizing the Accused Products.

126.     The Accused Products utilize one or more information monitoring devices, including IoT sensors and digital cameras, which are implemented using Defendant OptiSigns' products and services to gather information about persons at a location, such as in retail stores associated with Defendant OptiSigns' customers.

127.     The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

128.     The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in locations associated with Defendant OptiSigns' customers, such as retail locations with digital signage.

129.     The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

130.    Defendant has directly infringed the '672 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '672 Patent.

131.    The Accused Products satisfy each and every element of the asserted claim of the '672 Patent either literally or under the doctrine of equivalents.

132.    Defendant's infringing activities are and have been without authority or license under the '672 Patent.

133.    As a direct and proximate result of Defendant's infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

134.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant has been aware of the '672 Patent and its infringement thereof.  Despite this knowledge, Defendant has continued to supply the Accused Products, and Defendants' customers have continued to use the Accused Products in their retail operations using digital signage.

135.    Alpha Modus is informed and believes that Defendant knew or was willfully blind to the patented technology of the '672 Patent. Despite this knowledge or willful blindness, Defendant has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

136.    Alpha Modus is informed and believes that Defendant has made no efforts to avoid infringement of the '672 Patent, despite its knowledge and understanding that its products and systems infringe the '672 Patent.

137.    Therefore, Defendant's infringement of the '672 Patent is willful and egregious, warranting an enhancement of damages.

138.    As such, Defendant has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '672 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**COUNT VI**

**(INDUCED PATENT INFRINGEMENT OF THE '672 PATENT)**

139.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

140.    Defendant is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '672 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '672 Patent.

141.    Defendants' customers have utilized the Accused Products in digital signage which practices the patented methods of the '672 Patent.

142.    Defendant's implementation of the Accused Products demonstrates specific intent to induce infringement of the '672 Patent. Defendant encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '672 Patent.

143.    Defendant's knowledge of the '672 Patent and its implementation of the Accused Products, combined with the ongoing use of the Accused Products by Defendant's customers, demonstrates Defendant's knowledge and intent that the Accused Products be used in a manner that infringes the '672 Patent.

144.     Defendant's actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendant's promotions and instructions, demonstrate Defendant's specific intent to induce infringement of the '672 Patent.

145.     Alpha Modus is informed and believes, and on that basis alleges, that Defendant knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Defendant, one or more claims of the '672 Patent.

146.     As a direct and proximate result of Defendant's induced infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

147.     Alpha Modus is entitled to recover from Defendant compensation in the form of monetary damages suffered as a result of Defendant's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII

## (DIRECT PATENT INFRINGEMENT OF THE '890 PATENT)

148.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

149.     Defendant has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including digital signage utilizing the Accused Products.

150.     The Accused Products utilize one or more information monitoring devices, including IoT sensors and digital cameras, which are implemented using Defendant OptiSigns' products and services to gather information about persons at a location, such as in retail stores associated with Defendant OptiSigns' customers.

151.    The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

152.    The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in locations associated with Defendant OptiSigns' customers, such as retail locations with digital signage.

153.    The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

154.    Defendant has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

155.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

156.    Defendant's infringing activities are and have been without authority or license under the '890 Patent.

157.    As a direct and proximate result of Defendant's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

158.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant has been aware of the '890 Patent and its infringement thereof.  Despite this knowledge, Defendant has continued to supply the Accused Products, and Defendants' customers have continued to use the Accused Products in their retail operations using digital signage.

159.    Alpha Modus is informed and believes that Defendant knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness,

Defendant has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

160.    Alpha Modus is informed and believes that Defendant has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

161.    Therefore, Defendant's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

162.    As such, Defendant has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

### (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

163.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

164.    Defendant is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

165.    Defendants' customers have utilized the Accused Products in digital signage which practices the patented methods of the '890 Patent.

166.    Defendant's implementation of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. Defendant encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

167.    Defendant's knowledge of the '890 Patent and its implementation of the Accused Products, combined with the ongoing use of the Accused Products by Defendant's customers, demonstrates Defendant's knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent.

168.    Defendant's actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendant's promotions and instructions, demonstrate Defendant's specific intent to induce infringement of the '890 Patent.

169.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Defendant, one or more claims of the '890 Patent.

170.    As a direct and proximate result of Defendant's induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

171.    Alpha Modus is entitled to recover from Defendant compensation in the form of monetary damages suffered as a result of Defendant's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT IX

## (DIRECT PATENT INFRINGEMENT OF THE '880 PATENT)

172.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

173.    Defendant has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '880 Patent, including digital signage utilizing the Accused Products.

174.    The Accused Products utilize one or more information monitoring devices, including IoT sensors and digital cameras, which are implemented using Defendant OptiSigns' products and services to gather information about persons at a location, such as in retail stores associated with Defendant OptiSigns' customers.

175.    The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

176.    The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in locations associated with Defendant OptiSigns' customers, such as retail locations with digital signage.

177.    The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

178.    Defendant has directly infringed the '880 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '880 Patent.

179.    The Accused Products satisfy each and every element of the asserted claim of the '880 Patent either literally or under the doctrine of equivalents.

180.    Defendant's infringing activities are and have been without authority or license under the '880 Patent.

181.    As a direct and proximate result of Defendant's infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

182.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant has been aware of the '880 Patent and its infringement thereof.  Despite this knowledge, Defendant has continued to supply the Accused Products, and Defendants' customers have continued to use the Accused Products in their retail operations using digital signage.

183.    Alpha Modus is informed and believes that Defendant knew or was willfully blind to the patented technology of the '880 Patent. Despite this knowledge or willful blindness, Defendant has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

184.    Alpha Modus is informed and believes that Defendant has made no efforts to avoid infringement of the '880 Patent, despite its knowledge and understanding that its products and systems infringe the '880 Patent.

185.    Therefore, Defendant's infringement of the '880 Patent is willful and egregious, warranting an enhancement of damages.

186.    As such, Defendant has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '880 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT X

## (INDUCED PATENT INFRINGEMENT OF THE '880 PATENT)

187.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

188.    Defendant is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '880 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '880 Patent.

189.    Defendants' customers have utilized the Accused Products in digital signage which practices the patented methods of the '880 Patent.

190.    Defendant's implementation of the Accused Products demonstrates specific intent to induce infringement of the '880 Patent. Defendant encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '880 Patent.

191.    Defendant's knowledge of the '880 Patent and its implementation of the Accused Products, combined with the ongoing use of the Accused Products by Defendant's customers, demonstrates Defendant's knowledge and intent that the Accused Products be used in a manner that infringes the '880 Patent.

192.    Defendant's actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendant's promotions and instructions, demonstrate Defendant's specific intent to induce infringement of the '880 Patent.

193.    Alpha Modus is informed and believes, and on that basis alleges, that Defendant knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Defendant, one or more claims of the '880 Patent.

194.    As a direct and proximate result of Defendant's induced infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

195.    Alpha Modus is entitled to recover from Defendant compensation in the form of monetary damages suffered as a result of Defendant's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

### JURY DEMAND

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

### PRAYER FOR RELIEF

WHEREFORE, Alpha Modus prays for relief against Defendant as follows:

(A)    An entry of judgment that Defendant has infringed and is directly infringing one or more claims of each of the Patents-in-Suit;

(B)    An entry of judgment that Defendant has infringed and is indirectly infringing one or more claims of each of the Patents-in-Suit;

(C)    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

(D)    An entry of judgment that the Patents-in-Suit are valid and enforceable;

(E)    An order awarding damages sufficient to compensate Alpha Modus for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

(F)    A determination that Defendant's infringement has been willful, wanton, deliberate, and egregious;

(G)    A determination that the damages against Defendant be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)   A finding that this case against Defendant is "exceptional" and an award to Alpha

Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)   An accounting of all infringing sales and revenues of Defendant, together with post

judgment interest and prejudgment interest from the first date of infringement of

the each of the Patents-in-Suit; and

(J)   Such further and other relief as the Court may deem proper and just.


Dated: April 15, 2025                                    Respectfully submitted,

                                                         /s/ *Joshua G. Jones*
                                                         Christopher E. Hanba
                                                         Texas Bar No. 24121391
                                                         chanba@dickinson-wright.com
                                                         Joshua G. Jones
                                                         Texas Bar No. 24065517
                                                         jjones@dickinson-wright.com
                                                         Bryan D. Atkinson
                                                         Texas Bar No. 24036157
                                                         batkinson@dickinson-wright.com

                                                         DICKINSON WRIGHT PLLC
                                                         607 W. 3rd Street, Suite 2500
                                                         Austin, Texas 78701
                                                         Telephone: (512) 582-6889
                                                         Facsimile: (844) 670-6009

                                                         Ariana D. Pellegrino
                                                         Michigan Bar No. P79104
                                                         apellegrino@dickinson-wright.com
                                                         DICKINSON WRIGHT PLLC
                                                         500 Woodward Avenue, Suite 4000
                                                         Detroit, MI 48226
                                                         Telephone: 313-223-3500
                                                         Facsimile: (844) 670-6009

                                                         *Attorneys for Plaintiff Alpha Modus, Corp.*